## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-cv-21319-ALTMAN

**TERRELANCE MCCRAY**,

     *Petitioner,*

*v.*

**RICKY DIXON, SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS**,

     *Respondent.*

_____/

### ORDER

The Petitioner, Terrelance McCray, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his state-court, probation-violation conviction. *See* Petition [ECF No. 1] at 1. After careful review, we **DENY** the Petition.

### THE FACTS

On August 8, 2007, the State of Florida charged McCray in two separate cases. McCray was first charged in Case No. F07-023026 with trafficking cocaine (Count 1), resisting a law enforcement officer without violence (Count 2), and possession of cocaine with intent to sell (Count 3). *See* F07-023026 Information [ECF No. 12-1] at 98–102. McCray was also charged in Case No. F07-023332 with second-degree murder. *See* F07-023332 Information [ECF No. 12-1] at 103–05. On July 5, 2012, McCray agreed to "plea[d] . . . guilty in both of these cases [to] the murder and the trafficking[,] with the understanding that he will receive five years in state prison with credit for all time served followed by five years probation[.]" Change of Plea Hr'g Tr. [ECF No. 11-1] at 3. The state court accepted the guilty plea and imposed a sentence consistent with the plea agreement: five years in the custody of the Florida Department of Corrections—to be followed by five years of probation. *See* Judgment and Sentencing Orders [ECF No. 12-1] at 107–18. McCray did not appeal.

McCray was released from prison on July 20, 2012, and was informed that his probation was scheduled to terminate on July 19, 2017. *See* Probation Memorandum [ECF No. 12-1] at 126. Between May 27, 2015, and July 17, 2016, McCray's probation officer accused him of violating the terms of his probation on several different occasions by: (1) committing a new law violation in Case No. M15-017191 after being arrested for "battery/domestic violence" on July 25, 2013; (2) committing a new law violation in Case No. B15-019903 by resisting an officer without violence and possessing marijuana on May 26, 2015; (3) failing "to pay the State of Florida the amount of $10.00 per month toward the cost of supervision"; (4) failing to comply "with all instructions given to him by the probation officer" by committing new law violations in Case Nos. M15-017191 and B15-019903; (5) committing a new law violation in Case No. M16-20168 after being arrested for "assault/domestic violence" on July 17, 2016; and (6) failing to comply with the probation officer's instructions by committing the new law violation in Case No. M16-20168. *See* Fifth Amended Violation of Probation Affidavit [ECF No. 12-1] at 145–48.

The state trial court held a probation-violation ("VOP") hearing on February 17, 2017. *See* VOP Hr'g Tr. [ECF No. 11-3] at 2–125. After hearing the evidence, the trial court concluded that McCray *had* violated his probation "by committing the offenses of resisting [an] officer . . . without violence[ ] [a]nd possession of cannabis as events [sic] by the testimony regarding the incident of May 26, 2015." *Id.* at 114–15. At the same time, the court determined that the State had failed to prove, by a preponderance of the evidence, the other violations. *Ibid.* At McCray's May 11, 2017, VOP sentencing, the state trial court revoked McCray's probation and sentenced McCray to thirty years in prison—with a twenty-five year mandatory minimum—followed by twenty years of probation. *See* Sentencing Hr'g Tr. [ECF No. 11-4] at 56–57; *see also* VOP Judgment and Sentencing Orders [ECF No. 12-1] at 150–54.

2

McCray appealed his VOP conviction and sentence to the Third DCA, raising two issues: (1) that defense counsel was ineffective during the VOP hearing because he failed "to present a potentially meritorious defense" that McCray "suffers from a delusional disorder and paranoia raising a question as to whether his panicked flight from police was willful"; and (2) that the trial court had failed to comply with FLA. STAT. § 948.06(8)(e) when it declined to make a "danger finding." VOP Appeal Initial Brief [ECF No. 12-1] at 183–84. On October 23, 2019, the Third DCA agreed with McCray's second argument and "reverse[d] and remand[ed] [the case] to the trial court for a new sentencing hearing with directions that the trial court make the necessary written findings consistent with section 948.06(8)(e) when imposing its sentence." *McCray v. State*, 283 So. 3d 406, 409 (Fla. 3d DCA 2019). At the same time, the Third DCA summarily rejected McCray's ineffective-assistance argument. *See ibid.* ("We affirm without further discussion as to McCray's other point on appeal.").

The state trial court held a VOP resentencing on July 27, 2020, at which it imposed a nearly identical sentence: thirty-years in the custody of the Florida Department of Corrections, to be followed by twenty years of probation—this time *without* the twenty-five-year mandatory minimum. *See* VOP Resentencing Judgment and Sentencing Orders [ECF No. 12-2] at 3–7.[1] Although McCray appealed this sentence to the Third DCA, his appellate lawyer successfully moved to withdraw from the case "in the manner outlined in *Anders v. California*, 386 U.S. 738 (1967)[.]" Order on Motion to Withdraw [ECF No. 12-2] at 10–11. McCray, now proceeding *pro se*, argued on appeal that his trial counsel was ineffective during the plea negotiations (in the VOP proceedings) because he had misled McCray into believing that the best plea offer he could receive from the State was "the 25 [year] minimum mandatory[.]" Attachment to Brief of Appellant [ECF No. 12-2] at 15. On February 17, 2021, the

---

[1] During McCray's resentencing hearing, the parties agreed, for the first time, that the mandatory minimum the trial court had imposed during the original sentencing was improper. *See* Resentencing Hr'g Tr. [ECF No. 11-5] at 25 ("This time, we wouldn't have the—the 25-year minimum mandatory because, like I said the right thing is that it shouldn't be imposed since [McCray] was not colloquied [sic] on it, meaning that he'll have more gain time.").

Third DCA summarily affirmed the VOP Resentencing Judgment in an unwritten opinion. *See McCray v. State*, No. 3D20-1137 (Fla. 3d DCA Feb. 17, 2021).

On July 15, 2022,[2] McCray filed a *pro se* motion for postconviction relief under FLA. R. CRIM. P. 3.850. *See* Postconviction Motion [ECF No. 12-2] at 19–37. In that motion, McCray advanced three arguments: (1) that VOP "counsel provided constitutionally ineffective assistance by failing to present [a] mental illness defense at [the] VOP hearing," *id.* at 26; (2) that VOP counsel was ineffective during the plea-negotiation phase because he misinformed McCray that he "would be subject to a 25-year minimum mandatory if his probation was to be revoked," *id.* at 30; and (3) cumulative error, *see id.* at 35. On January 23, 2023, the state postconviction court denied the Postconviction Motion "for the reasons set forth in the State's response[.]" Order Denying Postconviction Motion [ECF No. 12-2] at 82. McCray filed a motion for rehearing, *see* Motion for Rehearing [ECF No. 12-2], at 84–89, but the state postconviction court summarily denied that motion on February 24, 2023, *see* Order Denying Motion for Rehearing [ECF No. 12-2] at 99.

McCray appealed the denial of his Postconviction Motion to the Third DCA. On appeal, McCray argued that the state postconviction court had erred in denying each of the three claims he raised in his Postconviction Motion. *See* Postconviction Initial Brief [ECF No. 12-2] at 123–24. On September 6, 2023, the Third DCA summarily affirmed the state postconviction court in a "citation opinion." *See McCray v. State*, 2023 WL 5731309, at *1 (Fla. 3d DCA Sept. 6, 2023).[3] McCray filed both

---

[2] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

[3] A "citation opinion" is a non-precedential decision by which a Florida appellate court issues an order *without* providing a reasoned explanation beyond "merely cit[ing] counsel-advising cases." *Jollie v. State*, 405 So. 2d 418, 420 (Fla. 1981). For example, the citation opinion in *McCray* reads as follows:

Affirmed. *See Corzo v. State*, 806 So. 2d 642, 645 (Fla. 2d DCA 2002) (explaining ineffective assistance of counsel claim on postconviction relief motion is procedurally barred when prior opinion on direct appeal expressly addresses issue of ineffective

a "motion for rehearing en banc" and a "motion for rehearing or clarification and motion for written opinion" on October 24, 2023. *See* Motions for Rehearing [ECF No. 12-2] at 195–209. But, on February 22, 2024, the Third DCA denied both motions. *See* Order on Motion for Rehearing En Banc [ECF No. 12-2] at 102. The Third DCA issued its mandate on March 14, 2024. *See* Postconviction Mandate [ECF No. 12-2] at 101.

McCray filed this Petition on April 2, 2024. *See* Petition at 9.

## THE LAW

### I.      The Antiterrorism and Effective Death Penalty Act ("AEDPA")

AEDPA instructs district courts to deny any claim that was "adjudicated on the merits" in a state-court proceeding unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011) (summarizing 28 U.S.C. § 2254(d)–(e)). To have "adjudicated [the claim] on the merits," the state court need not have issued any kind of formal opinion or even outlined its reasoning. *Id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Rather, when a state court doesn't articulate its reasons for the denial, the federal court must "'look through' the unexplained decision to

---

assistance of counsel); *Wright v. State*, 113 So. 3d 43, 44 (Fla. 2d DCA 2012) ("[Appellant] failed to provide any details regarding the allegedly foregone plea offer, which is required as part of the prejudice analysis in claims such as these."); *Griffin v. State*, 866 So. 2d 1, 22 (Fla. 2003) ("[W]here individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail."); *see also McCray v. State*, 283 So. 3d 406, 408–09 (Fla. 3d DCA 2019) (hearing appellant's ineffective assistance claim and finding it to be without merit).

*McCray*, 2023 WL 5731309, at *1.

the last related state-court decision that does provide a rationale" and "then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To be "contrary to clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up).

For "a state court's application of [Supreme Court] precedent" to be "'unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (cleaned up). "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Richter*, 562 U.S. at 101. "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up).

Section 2254(d) similarly prohibits federal judges from reevaluating a state court's factual findings unless those findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To establish that a state court's factual findings were unreasonable, "the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'" *Ward*, 592 F.3d at 1155–56

(quoting 28 U.S.C. § 2254(e)(1)). "[E]ven if a petitioner successfully carries his burden under § 2254(e)(1)—showing by clear and convincing evidence that a particular state-court factual determination was wrong—he does not necessarily meet his burden under § 2254(d)(2): Even if the state court made a clearly erroneous factual determination, that doesn't necessarily mean the state court's 'decision' was 'based on' an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022) (en banc) (quoting 28 U.S.C. § 2254(d)(2)). Indeed, habeas relief is not warranted "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an unreasonable determination of the facts and isn't based on any such determination." *Ibid.* (cleaned up).

"AEDPA's standard is intentionally difficult to meet." *Woods*, 575 U.S. at 315 (cleaned up). When reviewing state criminal convictions on collateral review, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 316 (cleaned up).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The *Brecht* harmless-error standard requires habeas petitioners to prove that they suffered "actual prejudice." *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012). As the Supreme Court recently explained, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it didn't eliminate *Brecht*'s actual-prejudice requirement. *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022). In other words, a habeas petitioner must satisfy *Brecht*, even if AEDPA applies. *See id.* at 1526 ("[O]ur equitable precedents remain applicable 'whether or

not' AEDPA applies." (citing *Fry v. Pliler*, 551 U.S. 112, 121 (2007)). In short, a "federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests." *Id.* at 1524 (emphasis in original); *see also Mansfield*, 679 F.3d at 1307 ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

## II.     AEDPA's Procedural Requirements

"[A] person in custody pursuant to the judgment of a State court" has one year to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). That one-year period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D). But this limitations defense is waivable. *See Day v. McDonough*, 547 U.S. 198, 210 n.11 (2006) ("[S]hould a State intelligently waive a statute of limitations defense, a district court would not be at liberty to disregard that choice.").

Beyond meeting this one-year window, though, federal habeas petitioners must also *exhaust* their claims by "*properly* present[ing] [them] to the state courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (emphasis in original). Specifically, federal habeas petitioners must "fairly present every issue raised in [their] federal petition to the state's highest court, either on direct appeal or on collateral

review." *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (cleaned up). "If a petitioner fail[ed] to 'properly' present his claim to the state court—by exhausting his claim[ ] and complying with the applicable state procedure—prior to bringing his federal habeas claim, then [§ 2254] typically bars [courts] from reviewing the claim." *Ibid.* In other words, where a petitioner has not "*properly* presented his claims to the state courts," the petitioner will have "procedurally defaulted his claims" in federal court. *O'Sullivan*, 526 U.S. at 848.

There are, to be sure, two exceptions to the general rule that a federal court may not consider a procedurally defaulted claim on the merits: "cause and prejudice" and "actual innocence." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) ("[A] federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default. We have recognized a narrow exception to the general rule when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense."). A habeas petitioner can establish "cause and prejudice" if (1) "some objective factor external to the defense impeded the effort to raise the claim properly in the state court," and (2) "there is at least a reasonable probability that the result of the proceeding would have been different." *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017). "Actual innocence," on the other hand, "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). The petitioner bears the burden of establishing that one of these exceptions to the procedural-default rule applies. *See Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice."); *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The petitioner must support the actual innocence claim with new reliable evidence[.]" (cleaned up)).

All that said, "[s]tates can waive procedural bar defenses in federal habeas proceedings, including exhaustion." *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) (cleaned up)). But "[a] State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, *expressly* waives the requirement." 28 U.S.C. § 2254(b)(3) (emphasis added); *see also McNair v. Campbell*, 416 F.3d 1291, 1304 (11th Cir. 2005) (same).

## III.   Ineffective Assistance of Counsel

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. CONST. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88). This same standard applies to alleged errors made by both trial counsel and appellate counsel. *See Farina v. Sec'y, Fla. Dep't of Corr.*, 536 F. App'x 966, 979 (11th Cir. 2013) ("A claim of ineffective assistance of appellate counsel is evaluated under the same standard as for trial counsel.").

To establish the first prong (deficiency), "a petitioner must [show] that *no* competent counsel would have taken the action that his counsel did take[.]" *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) (emphasis added). So, if "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel could not have performed deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong (prejudice), "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To succeed on this prong, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

## ANALYSIS

In his Petition, McCray advances two grounds for relief. *First*, he contends that his lawyer was ineffective at his VOP hearing because he failed to argue that McCray "was diagnosed with a mental illness" and that, due to that mental illness, the violations were "not willful or substantial." Petition at 4. *Second*, McCray complains that counsel "failed to properly investigate facts during plea negotiations" and (relatedly) that counsel incorrectly concluded that "the State's hands were tied because of the 25 [year mandatory minimum]." *Id.* at 5–6. The State concedes *both* that the Petition is timely, *see* Response to Order to Show Cause ("Response") [ECF No. 10] at 8 ("The instant petition appears timely."), *and* that McCray properly exhausted both of his claims, *see id.* at 10 ("Because both of the instant claims were litigated in the trial court and Florida appellate courts, [they] appear[ ] exhausted for federal habeas review."). We'll therefore proceed directly to the merits of each claim without analyzing § 2254's procedural requirements. *See Day*, 547 U.S. at 209–10 ("[D]istrict courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition. . . . We stress that a district court is not required to doublecheck the State's math."); *Vazquez*, 827 F.3d at 966 ("States can waive procedural bar defenses in federal habeas proceedings, including exhaustion." (cleaned up)).

## I.        Ground One

In Ground One, McCray criticizes his VOP lawyer for failing to argue that McCray "was diagnosed with a mental illness and was given medication for paranoia and Bipolar Depression Disorder." Petition at 4. McCray now contends that a mental-health defense based on his paranoia and bipolar depression would have been "meritorious" because "it would have shown that the violation was not willful or substantial." *Ibid.*[4] Although McCray admits that his lawyer presented expert testimony about his mental illness at the sentencing, he insists that his lawyer should've called the expert at the VOP hearing itself. *See ibid.* ("Counsel used this information where only mitigation of the sentence was considered, at the sentencing hearing. Had counsel called Dr. Hans from CHI South and Dr. D. Tomaso to testify at the VOP hearing, it would have shown that the violation was not willful or substantial."). Because the state court reasonably rejected this argument, we deny Ground One.

We'll begin by recounting the relevant factual background. McCray was accused of committing several probation violations, *see* Fifth Amended Violation of Probation Affidavit [ECF No. 12-1] at 145–48, but the trial court found that the State had proved only one: that, on May 26, 2015, McCray committed new law violations when he resisted an officer without violence and possessed marijuana, *see* VOP Hr'g Tr. [ECF No. 11-3] at 114–15. The unrebutted evidence at the VOP hearing showed that McCray had "lawfully obey[ed] all commands of Officer Perez" at the beginning of a traffic stop. *Id.* at 109. But, when Officer Perez asked McCray to step out of his vehicle, McCray said "fuck this and . . . took off running east bound across US 1." *Id.* at 26. McCray "ran briefly" but quickly surrendered after another officer "pull[ed] up and [told] him to stop[.]" *Id.* at 110. A search of

---

[4] Under Florida law, the State cannot establish a probation violation unless it proves "by a preponderance of the evidence that [the] probationer willfully violated a substantial condition of probation." *Van Wagner v. State*, 677 So. 2d 314, 316 (Fla. 1st DCA 1996).

McCray's vehicle revealed a "burnt marijuana cigarette" in the center console—which McCray denied smoking. *Id.* at 111–12.[5]

Rather than focusing on McCray's mental health, defense counsel chose to argue that McCray's offenses were minor (*i.e.*, not "willful and substantial") and that they did not warrant the revocation of his probationary status. Counsel described McCray's decision to flee from Officer Perez as "a [temporary] lapse in judgment" brought about by spur-of-the-moment "panic," and he pointed out that McCray had immediately stopped running and did not resist "when he heard the lawful command of Detective Morris." *Id.* at 110–11. As for the marijuana possession, counsel argued that there was "no proof that Mr. McCray was ever smoking it" or that McCray even knew the cigarette was in his vehicle. *Id.* at 112. The state trial court rejected defense counsel's arguments and found that McCray had violated the terms of his probation and that the violation "was willful, substantial and supported by the greater weight of evidence." *Id.* at 114.

Since AEDPA limits our review to "the last state court to decide a prisoner's federal claim . . . on the merits in a reasoned opinion," *Wilson*, 584 U.S. at 125, our focus is on the Third DCA's decision to "affirm without further discussion" McCray's ineffective-assistance claim on direct appeal, *McCray*, 283 So. 3d at 409.[6] Because the Third DCA didn't explain why it rejected this claim, we must

---

[5] McCray's girlfriend testified at the VOP hearing that the marijuana in the car belonged to her. *See* VOP Hr'g Tr. at 75 ("Q: Did you have a blunt in that car during the time that Mr. McCray was arrested in May 2015? A: Yes.").

[6] McCray raised the substance of Ground One *twice* in his state-court proceedings: once on direct appeal after his VOP hearing and again in his Postconviction Motion. *See* VOP Appeal Initial Brief [ECF No. 12-1] at 184–85; Postconviction Motion [ECF No. 12-2] at 26–29; *see also Lambert v. State*, 811 So. 2d 805, 807 (Fla. 2d DCA 2002) ("Generally, a claim of ineffective assistance of counsel may not be raised on direct appeal. However, an appellate court will consider a claim of ineffective assistance of counsel on direct appeal if the ineffectiveness is obvious on the face of the appellate record, the prejudice caused by the conduct is indisputable, and the tactical explanation for the conduct is inconceivable."). When McCray appealed the denial of his Postconviction Motion, the Third DCA held (by citing to another opinion) that McCray was procedurally barred from re-litigating that issue because it had already been decided on direct appeal. *See McCray*, 2023 WL 5731309, at *1 ("[I]neffective assistance of counsel claim[s] [in a] postconviction relief motion [are] procedurally barred when [a] prior opinion on direct appeal expressly addresses [the] issue of ineffective assistance

"review the record before the [Third DCA] to 'determine what arguments or theories supported or . . . could have supported, the state court's decision.'" *Hittson v. GDCP Warden*, 759 F.3d 1210, 1232 (11th Cir. 2014) (quoting *Richter*, 562 U.S. at 102). "To help us make this assessment, the Supreme Court has told us to consider issues 'that were briefed or argued to the state appellate court.'" *Ravelo v. Dixon*, 2023 WL 2837072, at *13 (S.D. Fla. Apr. 7, 2023) (Altman, J.) (cleaned up) (quoting *Wilson*, 584 U.S. at 126). McCray bears the "burden [ ] to demonstrate that there was no reasonable basis for the decision of [the state court] to deny his claim." *Tarleton v. Sec'y, Fla. Dep't of Corr.*, 5 F.4th 1278, 1291 (11th Cir. 2021).

McCray now says that his lawyer should have put on a mental-health defense—which (McCray believes) would have negated the State's evidence that he *willfully* violated his probation. *See* Petition at 4 ("Evidence of Mr. McCray's paranoid disease was [a] meritorious defense at the VOP hearing."); *see also Douglas v. State*, 333 So. 3d 353, 355 (Fla. 2d DCA 2022) ("A defendant's failure to comply with a probation condition is not willful where his conduct shows a reasonable, good faith attempt to comply, and factors beyond his control, rather than a deliberate act of misconduct, caused his noncompliance." (quoting *Comolli v. State*, 152 So. 3d 119, 120 (Fla. 2d DCA 2014))).

We, however, must presume that the Third DCA adopted the State's argument on direct appeal that "defense counsel's decision not to present evidence of [McCray's] psychiatric condition at the violation of probation hearing" did *not* constitute ineffective assistance of counsel. Direct Appeal Answer Brief [ECF No. 12-1] at 203. And there was ample support for that finding. At his VOP hearing, after all, McCray testified that he ran from law enforcement because "[h]e had heard negative

---

of counsel[.]" (citing *Corzo v. State*, 806 So. 2d 642, 645 (Fla. 2d DCA 2002))). Because the Third DCA's second opinion didn't reach the merits of Ground One, it is irrelevant to our inquiry under AEDPA. *Cf. Maples v. Thomas*, 565 U.S. 266, 280 (2012) ("As a rule, a state prisoner's habeas claims may not be entertained by a federal court when a state court has declined to address those claims because the prisoner failed to meet a state procedural requirement and the state judgment rests on independent and adequate state procedural grounds." (cleaned up)).

things about Officer Perez and the City of Homestead Police Department in general. He had heard stories that the police plant evidence. He knew his probationary status was in jeopardy. All rational, but not legal grounds, to run from the traffic stop." *Ibid.*; *see also* VOP Hr'g Tr. at 90–92 (McCray's testimony to that effect). Although McCray claimed that he was "paranoid" during the traffic stop, the Third DCA found (we presume) that McCray's reasons for running were "rational" and that there was no evidence McCray "was suffering from acute paranoia at the time of the traffic stop." Direct Appeal Answer Brief [ECF No. 12-1] at 203. And (of course) McCray's "paranoia" defense wouldn't have explained the presence of "[a] marijuana cigarette . . . in plain view in the open center console ashtray" of McCray's vehicle. *Id.* at 207.

For two reasons, the Third DCA's decision to deny Ground One was reasonable. *First*, counsel didn't perform deficiently when he chose *not* to present a mental-health defense at the VOP hearing. We presume that a defense attorney's decision to advance a certain defense was reasonable unless "no competent counsel would have taken the action that [defense] counsel did take." *Chandler*, 218 F.3d at 1315; *see also Dunn v. Reeves*, 594 U.S. 731, 739 (2021) ("In fact, even if there is reason to think that counsel's conduct 'was far from exemplary,' a court still may not grant relief if 'the record does not reveal' that counsel took an approach that no competent lawyer would have chosen." (cleaned up & quoting *Burt v. Titlow*, 571 U.S. 12, 23–24 (2013)). A reasonable lawyer could have concluded, as the Third DCA did, that McCray's previous diagnoses (paranoia and bipolar depression) *didn't* adequately explain *either* the presence of the marijuana cigarette in his car *or* his decision to run from the police— especially since, if he *had been* truly paranoid, he wouldn't have been so easily persuaded (by a complete stranger, who happened to be a member of the Homestead Police Department) to stop. *See Chandler*, 218 F.3d at 1318 ("And counsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly."). Plus, as any decent lawyer would

15

have recognized, McCray's own testimony that he ran (at least in part) because "I'm [on] probation and now I'm in contact with these you know the cops and all that and I just, I didn't know what to do," VOP Hr'g Tr. at 92, was a perfectly rational (if illegal) response to a police stop.

Instead of advancing this flawed mental-health excuse, counsel reasonably crafted a defense that embraced the bad facts (the presence of the marijuana cigarette, the sudden decision to flee, and the almost immediate compliance) by arguing that McCray's actions didn't constitute a willful and substantial probation violation. *See id.* at 110–11 ("McCray made a lapse in judgment temporarily to run across the street, he stopped when he heard the lawful command of Detective Morris. . . . I certainly don't believe [this] meets the definition of resisting without violence, your Honor."); *id.* at 112–13 ("I don't believe that there is evidence a proof [sic] sufficient to prove that Mr. McCray was in actual or constructive possession of the marijuana."). It's true that this defense ultimately proved unsuccessful. But McCray cannot challenge his lawyer's performance—and speculate that his proposed mental-health defense would have turned out better—just because the strategy his lawyer *did* take didn't work out. *See Ward*, 592 F.3d at 1164 ("We have long held that the fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel. Moreover, 'counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy.' (quoting *Chandler*, 218 F.3d at 1314)); *see also Bates v. Sec'y, Fla. Dep't of Corr.*, 768 F.3d 1278, 1300 (11th Cir. 2014) ("The record in this case demonstrates that Bowers labored diligently to defend his client. He subjected the state's case to adversarial testing. And he lost in the face of overwhelming evidence . . . . That is bad news for Bates, but it is not a Sixth Amendment violation.").

*Second*, McCray wasn't prejudiced by his lawyer's failure to advance a mental-health defense at the VOP hearing. McCray insists that, had defense counsel called Dr. Hans and Dr. Tomaso to testify at the hearing, the trial court would have found "that the violation was not willful or substantial."

16

Petition at 4. Neither of these doctors, however, would have made the least bit of difference. For starters, McCray never tells us what Dr. Hans would have said. *See generally* Petition. And conclusory and speculative allegations that a "missing witness[ ] would have been helpful" cannot establish prejudice. *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001). As for Dr. Tomaso, his testimony would have *undermined* McCray's defense—which was that he didn't *willfully* violate the terms of his probation. Although Dr. Tomaso concluded that McCray "had prominent paranoid symptoms," he also *agreed* that McCray was taking "anti-psychotic medication" while on supervision, and that this medication caused McCray to "act perfectly normal and be rational." *Id.* at 26–28. Dr. Tomaso's testimony would thus have *corroborated* the State's view that McCray was capable of acting "normal[ly]" and "rational[ly]" at the time of the violations. Since McCray fails to establish that "the result of the [VOP hearing] would have been different," he's failed to show that he was prejudiced by counsel's decision. *Strickland*, 466 U.S. at 694.

For both of these reasons, we **DENY** Ground One.

## II.    Ground Two

In Ground Two, McCray blames his lawyer for failing "to properly investigate facts during plea negotiations." Petition at 5. According to McCray, counsel told him that "the State's offer was 25 min/man and, if [McCray] lost the VOP hearing he would receive 30 years." *Id.* at 6. McCray ultimately rejected this offer, he explains, because he felt "that 25 years mandatory is the same as 30 years with gain time[.]" *Ibid.* What defense counsel failed to realize (McCray contends) is that "the 25 [year mandatory minimum] was inapplicable," so counsel should have been able to point out this legal error and bargain the State down to a more favorable offer. *Ibid.* The State's counterargument is simple: "[We] never made a plea offer." Response at 22.

The highest state-court decision to consider the merits of Ground Two was the Third DCA's citation opinion affirming the denial of McCray's Postconviction Motion. *See McCray*, 2023 WL

5731309, at *1. As relevant here, the Third DCA denied this same claim by quoting from the Second DCA's opinion in *Wright v. State*, 113 So. 3d 43 (Fla. 2d DCA 2012), which held that a defendant cannot show prejudice where he "fail[s] to provide any details regarding the allegedly foregone plea offer[.]" *Ibid.* (quoting *Wright*, 113 So. 3d at 44). And that's the same argument the State made to the state postconviction court, which (again) we presume the postconviction court adopted: "There was no plea offer conveyed by the State," the State argued—and, therefore, McCray "has not and cannot prove that an offer was ever made in the first place, let alone that the prosecutor would not have withdrawn the hypothetical offer or that [McCray] would have accepted an offer that never existed in the first place." State's Postconviction Response [ECF No. 12-2] at 66–67.[7]

The state court reasonably applied federal law in denying Ground Two. "Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). To prevail on a claim that his lawyer was ineffective during the plea-bargaining stage, a defendant must show prejudice. *See Missouri v. Frye*, 566 U.S. 134, 147 (2012). "[T]o establish prejudice, a defendant must show a reasonable probability that but for counsel's ineffectiveness: (1) 'the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)'; (2) 'the court would have accepted its terms'; and (3) 'the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.'" *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) (quoting *Lafler*, 566 U.S. at 164). The Florida Supreme Court has now adopted this standard. *See Alcorn v. State*, 121 So. 3d

---

[7] When a state postconviction court says that it has denied a rule 3.850 postconviction motion "for the reasons set forth in the State's response," Order Denying Postconviction Motion [ECF No. 12-2] at 82, we presume that it adopted the arguments the State advanced in that response, *see Calder v. Dixon*, 2023 WL 8719158, at *6 (S.D. Fla. Dec. 18, 2023) (Altman, J.) ("The state postconviction court denied the Amended Postconviction Motion 'for the reasons articulated in the State's response[.]' . . . We'll thus presume that [the court] applied the reasoning of the State's Postconviction Response." (cleaned up & citing *Wilson*, 584 U.S. at 125)).

419, 430 (Fla. 2013) ("Specifically, to establish prejudice, the defendant must allege and prove a reasonable probability, defined as a probability sufficient to undermine confidence in the outcome, that (1) he or she would have accepted the offer had counsel advised the defendant correctly, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."). McCray has failed to meet any of these elements because, contra McCray's assertion that "the State's offer was 25 [years]," Petition at 6, the record is clear that the State *never* extended him any formal offer.

During a January 15, 2016, status hearing (about a year before the VOP hearing, which took place on February 17, 2017), the Assistant State Attorney unambiguously said that "[t]here ha[ve] not been negotiations." Jan. 15, 2016 Hr'g Tr. [ECF No. 11-2] at 3. The state trial court then noted that, even if there had been a pending plea offer, he (the judge) would "not [be] comfortable at this time taking the plea on the case." *Id.* at 5. Later, at the beginning of the VOP hearing, the following exchange went down:

> The Court: Good. Alright, Mr. McCray is charged with several violations in his case. Let me ask this question before we proceed. [Has] there been a plea offer extended to Mr. McCray?
>
> [The Prosecutor]: I believe there were plea negotiations but nothing worked out.
>
> [Defense Counsel]: Your Honor, the previous state attorney had asked me for [a] mitigation package, I did provide it to them—to her. I never heard back, I do know she stated that there would be—because if the court revoked Mr. McCray's probation, there is a 25-year minimum mandatory that would attach. So, she was still saying that there would be significant prison time. So, she never came with me with a certain number, your Honor. But I've talked to Mr. McCray and I believe he wanted to go forward on the violations.
>
> The Court: Alright, is that correct Mr. McCray?
>
> [McCray]: Yes.

VOP Hr'g Tr. at 5–6. Note that McCray agreed with his lawyer's summary of the plea negotiations—an important detail given that, as the Supreme Court has said, "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Even if we agree, in short, that the lawyers were wrong to assume that McCray was subject to a 25-year mandatory minimum, the State (the record is pellucid) *never* extended him a formal offer—and, as a result, there was no deal for him to accept. The Third DCA thus reasonably concluded that a defendant cannot show prejudice at the plea-bargaining phase (under either federal or state law) when the State never extended a formal offer. *See Forbes v. State*, 269 So. 3d 677, 680 (Fla. 2d DCA 2019) ("Critically, what remains implicit but unsaid in *Alcorn* is that the favorable plea offer must actually exist."); *Turbi v. Sec'y, Dep't of Corr.*, 800 F. App'x 773, 775 (11th Cir. 2020) ("Because the record indicates, at most, that the state had contemplated giving a plea offer to Turbi, but never formally extended it to him, the state court's determination that the prosecuting attorney did not extend a plea deal to Turbi's defense counsel was a reasonable one."); *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) ("Logic dictates therefore, that to establish such prejudice, the petitioner must begin by proving that a plea agreement was formally offered by the government."); *see also Ether v. Dixon*, 2022 WL 1908918, at *12 (S.D. Fla. June 3, 2022) (Altman, J.) ("[A] lawyer cannot be faulted for failing to communicate an offer that was never made.").[8]

---

[8] The State also convincingly argues that McCray failed to "show the trial court would have accepted the plea[.]" Response at 26; *see also Osley*, 751 F.3d at 1222 (holding that a defendant cannot show prejudice unless "the court would have accepted [the plea agreement's] terms"). Recall that, during the January 15, 2016, hearing, the trial judge said he was "not comfortable at this time taking the plea on the case." Jan. 15, 2016 Hr'g Tr. at 5. The very same judge then *twice* sentenced McCray to thirty years in prison, noting that he had done so because of the severity of McCray's underlying offense. *See* Resentencing Hr'g Tr. at 39 ("I considered very significantly that [McCray] was convicted of a homicide, one of the worst, if not the worst crimes that can be committed by a person. . . . I understand Mr. Markus is making a comparison that a small violation versus a major violation should be handled differently. But in this case, it was a major case that the Defendant was on probation for, where a human life was lost."). Based on the trial judge's conduct, we think it exceedingly unlikely that he would have accepted a plea agreement that allowed McCray to serve a sentence of less than twenty-five years.

Without any evidence of a "plea offer [that] would have been presented to the court," *Osley*, 751 F.3d at 1222, we **DENY** Ground Two.

### EVIDENTIARY HEARING

We won't hold an evidentiary hearing in this case. "[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Cullen v. Pinholster*, 563 U.S. 170, 183 (2011) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). Based on what we've said—including and especially the presence of a robust state-postconviction record—we don't think we'd benefit from any further factual development.

### CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)). Reasonable jurists wouldn't find our assessment of McCray's constitutional claims debatable or wrong, so we'll **DENY** any request for a COA.

\*       \*       \*

Having carefully reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** that the Petition [ECF No. 1] is **DENIED**, that any demand for a COA is **DENIED**, that any request for an evidentiary hearing is **DENIED**, that all deadlines are **TERMINATED**, and

that any pending motions—including McCray's Motion for Extension of Time [ECF No. 13]—are

**DENIED** as moot. The Clerk shall **CLOSE** this case.

   **DONE AND ORDERED** in the Southern District of Florida on June 11, 2024.

                 _____

                 **ROY K. ALTMAN**
                 **UNITED STATES DISTRICT JUDGE**

cc:  counsel of record
   Terrelance McCray, *pro se*